IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 12-00363-14-CR-SJ-DKG |
| KIMBERLY JOY BLACK-McCORMICK, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS (Doc. #338) filed on May 9, 2014, by defendant Kimberly Joy Black-McCormick ("Black-McCormick"). On June 26, 2014, the undersigned held an evidentiary hearing on Black-McCormick's motion. Black-McCormick was present and represented by her counsel, Preston L. Cain. The government was represented by Assistant United States Attorney Bruce A. Rhoades. At the evidentiary hearing, testimony was given by two witnesses: Officer Tommy Gaddis and Detective Frank Rorabaugh both with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

        Gov't Ex. #1   [Dash camera video]
        Gov't Ex. #2   [Video interview]
        Gov't Ex. #3   [Video interview]

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

1

## PROPOSED FINDINGS OF FACT

1. On February 20, 2013, Officer Tommy Gaddis of the Kansas City Police Department was working in the Violent Crimes Enforcement Squad. Tr. at 5, 6.

2. On that date, Officer Gaddis and other officers were on a "proactive patrol," *i.e.*, checking various locations known to be the frequent location of criminal activity. Tr. at 7.

3. At around 5:30 p.m., Officer Gaddis and Officer Bryan Britten were patrolling in the area of 35th Street and Agnes. Tr. at 8.

4. Officer Gaddis noticed a black Toyota 4Runner parked (but running with the headlights on) with a man in the vehicle in front of a residence known to officers as a "drug house." Tr. at 8, 9.

5. According to Officer Gaddis, several prior arrests for methamphetamine had been made of people leaving the particular residence. Tr. at 9, 28-29.

6. Officer Gaddis was also aware that a woman named "Barbara Carnahan" was associated with the residence and that she had an outstanding felony warrant for drug sales. Tr. at 9, 30.

7. While Officers Gaddis and Britten were observing the 4Runner, they saw a woman exit the "drug house" residence and get into the passenger seat of the 4Runner and then the vehicle pulled away. Tr. at 12, 13.

8. The officers believed the woman was Barbara Carnahan. Tr. at 12.

9. Because of Barbara Carnahan's outstanding warrant, the officers stopped the vehicle. Tr. at 13-14, 22-23.

10. While the officers were pulling the 4Runner over, they observed the passenger begin "looking around frantically" and, when the 4Runner came to a stop, the passenger could be seen bending forward and reaching under the passenger seat. Tr. at 16, 26.

11. Officer Gaddis was concerned that the passenger was retrieving or concealing a weapon. Tr. at 16.

12. After the 4Runner stopped, both Officer Gaddis and Officer Britten got out of their patrol car. Tr. at 14-15.

13. The female passenger was removed from the 4Runner. Tr. at 15.

2

14. The passenger's identification was checked and it was determined that it was not Barbara Carnahan but, in fact, was Black-McCormick. Tr. at 15.

15. Black-McCormick was frisked to make sure that she was not concealing a weapon. Tr. at 17-18, 24.

16. Black-McCormick was then told that, because of her movements, the officers were going to inspect the passenger area of the 4Runner. Tr. at 17-18.

17. Black-McCormick appeared "very nervous." Tr. at 18, 24.

18. Officer Britten then looked under the passenger seat of the 4Runner and found a small bag with a zip top. Tr. at 18-19.

19. Because the bag was the size that could contain a weapon, Officer Britten opened the bag and looked inside. Tr. at 18-19.

20. Officer Britten saw roughly a half a pound of methamphetamine. Tr. at 19, 27.

21. Black-McCormick was then placed under arrest and handcuffed. Tr. at 24.

## PROPOSED CONCLUSIONS OF LAW

In her motion to suppress, Black-McCormick raises a single issue, namely that evidence in this case must be suppressed because law enforcement officers conducted an unconstitutional warrantless search of her[1] vehicle. Certainly, the Fourth Amendment provides that "the right of

---

[1] Black-McCormick was not the owner of the subject 4Runner. To that end, it is well-established that "Fourth Amendment rights are personal . . . [and] may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966-67 (1969). As such, typically "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Raka v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425 (1978). In this case, McCormick submitted an affidavit indicating that the 4Runner had been loaned to her and she "was responsible for the care and custody of the vehicle." In any event, in pleadings with the Court, the Government affirmatively represented that for purposes of the suppression motion, it was electing "to forgo the issue of 4th Amendment standing."

the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, the law enforcement officers did not have a warrant to search the 4Runner. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless, the Supreme Court has cautioned that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. . . . Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. [P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

4

Case 5:12-cr-00363-DGK   Document 397   Filed 11/19/14   Page 4 of 12

U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).

Without question, a traffic stop constitutes a seizure under the Fourth Amendment. *United States v. Peralez,* 526 F.3d 1115, 1119 (8th Cir. 2008). To that end, most warrantless traffic stops are justified under the Fourth Amendment based on probable cause and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996). In such cases, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994) (*en banc*). In this case, though, the government does not assert that an observed traffic violation supports the stop of the 4Runner. However, a constitutionally valid warrantless traffic stop may be supported by either probable cause or "reasonable suspicion." *United States v. Houston,* 548 F.3d 1151, 1153 (8th Cir. 2008).

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id.* at 30, 88 S.Ct. at 1884-85. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329 (1983). In large part, common sense dictates the analysis of reasonable suspicion.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.

*United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695 (1981). Inherent in the concept of reasonable suspicion is the fact that officers may be mistaken in their beliefs. The keystone in such cases hinges on reasonableness. Under the law, "a reasonable but mistaken belief may justify an investigative stop." *United States v. Bailey,* 417 F.3d 873, 877 (8th Cir. 2005). *See also United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999)( "A mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it.").

In this case, based on the totality of the circumstances, the Court finds that the officers were reasonably mistaken when they concluded that the female entering the passenger compartment of the 4Runner was an individual with an outstanding warrant. As such, the officers were initially justified in conducting a traffic stop of the 4Runner. *Compare United States v. Neemann* 61 F.Supp.2d 944, 950-51 (D.Neb. 1999) (police officer's belief that automobile passenger was person wanted for violating terms of pretrial release, while mistaken, was reasonable, where passenger was seen leaving house where wanted person was believed to reside and entering automobile, it was dark, passenger wore hat, and passenger bore resemblance to wanted person when wearing hat, and thus officer's belief provided reasonable suspicion required to support investigatory stop of automobile).

However, concluding that the initial stop of the 4Runner was justified under the Fourth Amendment is only the first inquiry. Not every proper *Terry* traffic stop justifies the warrantless search of the stopped vehicle.[3] In this case, the government seeks to justify the search of the passenger compartment as a reasonable "self-protective" vehicle search, arguing that it was reasonable for the officers to search the interior of the passenger compartment of the 4Runner for purposes of officer safety. This argument presents a very slippery slope for Fourth Amendment analysis in that the argument advanced by the government would seemingly undermine the explicit limitations placed on two other exceptions to the warrant requirement – the "automobile exception" and the "search incident to an arrest."

The so-called "automobile exception" authorizes law enforcement officers "to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)). The Supreme Court has justified this departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility. *California v. Carney*, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 2069 (1985). Nonetheless, the Court has repeatedly limited the scope of this potentially broad exception to the warrant requirement by requiring a showing of <u>probable cause</u>. And in that regard, probable cause to search an automobile only "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009). In this case, the government does not argue (with good

---

[3] Black-McCormick argues that the officers were required to discontinue the traffic stop once they learned of the mistaken identity. However, law enforcement officers are entitled to expand the scope of *Terry* stop if the officers' reasonable suspicions are further aroused during the initial stop. *United States v. Banks,* 553 F.3d 1101, 1105 (8th Cir.2009). As explained *infra*, the Court concludes that such further reasonable suspicion was justified in this case

7

reason) that the officers had probable cause to believe the 4Runner contained evidence of criminal activity based on Black-McCormick's furtive movements and nervous behavior.

With regard to a "search incident to an arrest," prior to 2009, the Eighth Circuit generally concluded that if officers had probable cause to arrest a driver, the officers had the right to not only search the driver's person incident to the arrest, but also to search the passenger compartment of his vehicle. *United States v. Poggemiller*, 375 F.3d 686, 687 (8th Cir. 2004) ("Under [*New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981)], when a police officer makes a lawful custodial arrest of an automobile's occupant, the Fourth Amendment allows the officer to search the vehicle passenger compartment as a contemporaneous incident of arrest.").

In 2009, however, the Supreme Court limited this broad exception to the warrant requirement when it issued its opinion in *Arizona v. Gant*, *supra*, and held that officers "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723 (*emphasis added*). *Gant* thus permits a warrantless search of a vehicle incident to a driver's arrest in only two circumstances. First, arresting officers are permitted to search the passenger compartment of a vehicle when an arrestee "is within reaching distance of the passenger compartment at the time of the search." In this case, there were no arrests and the search of the 4Runner occurred while Black-McCormick was well away from the vehicle. The second application of *Gant* permits an officer to conduct a vehicle search incident to an arrest where "it is reasonable to believe the vehicle contains evidence of the offense of arrest." In this case, again, no one had been arrested.

The fact the Supreme Court has limited the application of these well-known exceptions in a manner that would not permit their application to these facts is perhaps suggestive that a Fourth

8

Amendment violation occurred with the initial search of the passenger compartment of the 4Runner. However, for many years, the courts also have recognized the constitutional propriety of another exception to the warrant requirement – a "protective search" of vehicles. Specifically, the "reasonable suspicion" analysis of *Terry* has been extended to certain vehicle searches.

In *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480-81 (1983), the Court held:

> [P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* Moreover, in applying *Long*, the Eighth Circuit has found "once reasonable suspicion is established, a protective search of a vehicle's interior is permissible regardless of whether the occupants have been removed from the vehicle." *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011). Indeed, in *Long*, the Supreme Court itself specifically rejected an argument that a protective vehicle sweep was not reasonable inasmuch as the suspect "was effectively under [law enforcement] control during the investigative stop and could not get access to any weapons that might have been located in the automobile." *Long*, 463 U.S. at 1051, 103 S.Ct. at 3482. The Supreme Court found such reasoning "mistaken" inasmuch as:

> During any investigative detention, the suspect is "in the control" of the officers in the sense that he may be briefly detained against his will. Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in [the suspect's]

9

> position break away from police control and retrieve a weapon
> from his automobile. In addition, if the suspect is not placed under
> arrest, he will be permitted to reenter his automobile, and he will
> then have access to any weapons inside. <u>Or, as here, the suspect
> may be permitted to reenter the vehicle before the *Terry*
> investigation is over, and again, may have access to weapons</u>.

*Id*. at 1051-52, 103 S.Ct. at 3482 (*emphasis added*).

Reckless application of the *Long* protective search rule has the potential to effectively eviscerate the general warrant requirement of the Fourth Amendment when a vehicle stop is undertaken by law enforcement officers. Unlike the limitations imposed on a valid "automobile search" and a "search incident to arrest," the *Long* protective search rule[4] (like the *Terry* analysis) is constrained only by the reasonable suspicion requirement.

In this case, the Court concludes that the officers had the requisite reasonable suspicion to conduct a protective search of the passenger compartment of the 4Runner. At the time of the search, the officers had observed Black-McCormick exit from a known "drug house" in a high crime area, Black-McCormick made furtive movements when the officers began pulling over the 4Runner by appearing to retrieve/hide something under the passenger seat of the 4Runner, and McCormick acted unusually nervous during the traffic stop. While these observations would not constitute probable cause, they do satisfy the threshold of reasonable suspicion. In reaching this conclusion, the Court was persuaded by the Eighth Circuit's recent decision in *United States v. Morgan*, 729 F.3d 1086 (8th Cir. 2013) [a case not cited by either party].

In *Morgan*, the defendant sought to suppress methamphetamine seized from his vehicle. The record showed that law enforcement officers "were patrolling 24–hour businesses in

---

[4] The Eighth Circuit has noted that in adopting the limitations on a search of a vehicle incident to arrest, the Supreme Court "left [the holding in *Long*] untouched." *United States v. Goodwin–Bey*, 584 F.3d 1117, 1120 (8th Cir.2009) (*citing Arizona v. Gant*, 556 U.S. at 346-47, 129 S.Ct. at 1721).

10

response to robberies in the area" when they observed a vehicle with tinted windows parked at the far corner of a 24-hour grocery store parking lot. The officers saw that the three occupants of the vehicle were "ducked down" and as the officers approached the vehicle, "the person in the driver's seat sat up and reached under his seat with both hands." *Id*. at 1089. The officers then removed and handcuffed the occupants from the vehicle and seated them on a curb away from the car. *Id*. Due to concerns for officer safety, one of the officers searched the vehicle and when he reached under the driver's seat of the vehicle, he found a lockbox that was large enough to conceal a handgun. *Id*. The lockbox was opened and methamphetamine was found inside.

In finding that the methamphetamine should not be suppressed, the *Morgan* court initially determined that the stop and detention of the vehicle and its occupants was justified:

> The officers had reasonable suspicion to detain [the defendant] under *Terry*. While patrolling a 24–hour grocery store in an area where there had been recent robberies of 24–hour businesses, the officers observed a vehicle with tinted windows that was parked far away from the store entrance. It was late at night, and they noticed that the occupants of the vehicle were attempting to conceal themselves. As [an officer] approached the vehicle, [the defendant] made furtive gestures under his seat with both hands. And [the defendant initially] refused to remove his hands from under the seat when [an officer] first ordered him to do so. Taken together, these factors amount to reasonable suspicion that [the defendant] was engaged in criminal activity, and a reasonable belief that [the defendant] was dangerous.

*Id*. at 1090. Having found that the stop and detention were permissible under the *Terry*, the *Morgan* court then addressed the search of the vehicle. Relying on *Michigan v. Long*, the court concluded:

> [The defendant's] furtive gestures under his seat as the officers approached the vehicle gave them reason to believe that there was a weapon in the vehicle that [the defendant] might access when the *Terry* stop ended and he was permitted to return to the vehicle. This objectively reasonable concern for officer safety justified [the officer's] immediate protective sweep under the

11

> driver's seat of the vehicle. Because reasonable suspicion was established, the officers' search of the vehicle's interior was permitted even though the occupants had been removed from the vehicle. [The officer] also was authorized to search the lockbox he found in the vehicle, which was large enough to conceal a weapon, because a valid search under *Long* extends to closed containers found in the vehicle's passenger compartment.

*Id*.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS (Doc. #338) filed on May 9, 2014, by defendant Kimberly Joy Black-McCormick.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ *John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**